# DECLARATION of SEAN CUMMINGS

I, Sean Cummings, do hereby declare:

## BACKGROUND/EXPERIENCE

1. I am a Special Agent (SA) with the Drug Enforcement Administration (DEA) and have been since 1999. Prior to this, I was a Police Officer and Detective at the Eureka Police Department in Eureka, California. My current assignment is at the Eugene Resident Office in Oregon. My training and experience includes completion of the DEA basic training academy. This training included the investigation, detection, and identification of controlled substances. I have consulted and conversed with several other agents and officers from various local, state, and federal agencies on various drug cases, including the distribution of heroin, cocaine, methamphetamine, marijuana and other controlled substances. As a result of this and my own experience and training, I am familiar with heroin, cocaine, methamphetamine, marijuana, and other controlled substances and the methods employed by traffickers of these substances.

## PURPOSE OF THIS DECLARATION

2. This declaration is submitted in support of a complaint *in rem* for forfeiture of the following property:

    a. Real Property located at 84902 Hideaway Hills Road, Eugene, Oregon (hereinafter "Defendant Real Property").

    b. $129,822 in United States currency;

    c. $4,000.00 in United States currency;

    d. $1,182 in United States currency;

    e. A 2007 Dodge Ram 3500 Truck, VIN 3D7ML38A17G821336;

  f. A Kubota M7060HDC12 Tractor, Serial No. 77182 with Kubota LA1154S Bucket Loader, Serial No. C1155;

  g. A Takeuchi TB235-2 Excavator, Serial No: 123602057;

  h. A 2022 Great Northern Trailer Works, Inc., 14k Custom Gooseneck Dump Trailer, VIN 5VKGD142XPS016040,

(items b-h hereinafter "Defendant Personal Property").

  3. The Defendant Real Property is a tract of land situated at 84902 Hideaway Hills Road Eugene, Lane County, Oregon more fully described as approximately 29.86-acre parcel that contains one small shop that is being used as an office and two 60' by 300' buildings. The property does not contain a residence. According to the Lane County real property tax statement, the Defendant Real Property is owned by Kit Wah Chan and Karen Chan. The property is located north of Dillard Rd and west of North Hideaway Hills Rd.  The east side of the property is bordered by North Hideaway Hills Road and the south/west side is bordered by Dillard Road. The property is primarily pastureland.  On the east side of the property are two 60' by 300' metal shop-style structures which, based on Lane County permit records, were constructed beginning in 2018. There is also a 60' by 60' metal shop structure to the north side.  The buildings are accessed by a double gated driveway which travels west from North Hideaway Hills Road.

**Declaration of Sean Cummings**                EXHIBIT A   PAGE 2
                                              Complaint *In Rem*
                                              FOR FORFEITURE



**The above photo is a screenshot of the Defendant Real Property captured from the Regional Land Information Database**

4. The legal property description of the Defendant Real Property is as follows:

   Beginning at the Northeast corner of the R.H. Renshaw Donation Land Claim No. 54, thence West along the North line of said Donation Land Claim 30.3 chains, thence South 1 chain, thence West on a line parallel to the North line of said Donation Land Claim No. 54 to the intersection of said line with County Road No. 1014 (Dillard Road), thence South and East along the Easterly boundary of said road to the East line of Donation Land Claim No. 54, thence North to the point of beginning, all in Lane County, Oregon. EXCEPT that portion conveyed to Lane County by Warranty Deed recorded July 15, 1966, Reception No. 54181, Lane County Oregon Deed Records. (For Dillard Road)

5. In this declaration I will demonstrate, based on the evidence I have reviewed, that there is probable cause to believe, and I do believe that the Defendant Real Property located at 84902 Hideaway Hills Road, Eugene, Oregon, and outlined above was used or intended to be used to facilitate the illegal production, conversion, and distribution of marijuana, in violation of Title 21, United States Code, Section 841, 846, and 856, and is therefore subject to forfeiture pursuant to Title 21, United States Code, Section 881(a)(7).

**Declaration of Sean Cummings**                                EXHIBIT A   PAGE 3
                                                                Complaint *In Rem*
                                                                FOR FORFEITURE

6. In this declaration I will demonstrate, based on the evidence I have reviewed, that there is probable cause to believe, and I do believe that the Defendant Personal Property outlined above represent proceeds traceable to an exchange for controlled substances or were used or intended to be used to facilitate such a transaction in violation of Title 21, United States Code, Section 841, 846, and 856, and is therefore subject to forfeiture pursuant to Title 21, United States Code, Sections 881(a)(4) and (a)(6).

7. The facts in this declaration come from my personal observations, my training and experience, and information obtained from other agents, deputies, and officers. This declaration is for the limited purpose of establishing probable cause. Therefore, I have not set forth each fact learned during the investigation, but only those facts and circumstances necessary to establish probable cause.

## REAL PROPERTY ASSESSMENT REPORT

8. The Lane County Assessor's Summary Report for 2022 shows that Kit Wah Chan and Karen Chan are the owners for the Defendant Real Property at 84902 Hideaway Hills Road Eugene, Oregon. The Defendant Real Property is 29.86 acres. The mailing address in law enforcement databases including Oregon Department of Motor Vehicles ("DMV") for Kit Wah Chan and Karen Chan is their residence on Meadow View Drive in Eugene, Oregon.

## SUMMARY OF THE INVESTIGATION

9. In 2021, Lane County Sheriff's Office ("LCSO") Sgt. Marvin Combs became aware of the Defendant Real Property as a marijuana cultivation operation based on information obtained from a Bureau of Land Management ("BLM") Law Enforcement Ranger who lives in the area. The BLM ranger indicated to Sgt. Combs that he could smell the strong odor of

**Declaration of Sean Cummings**　　　　　　　　　　　　EXHIBIT A   PAGE 4
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Complaint *In Rem*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　FOR FORFEITURE

marijuana when driving past the location.  It was assumed at the time that this grow was a permitted Oregon Liquor and Cannabis Commission ("OLCC") operation.  When LCSO checked the address for valid permits, as of February 2023, it found the address never had permits for any marijuana-related activity from either from the OLCC or the Oregon Medical Marijuana Program ("OMMP") or a permit to grow hemp from the Oregon Department of Agriculture ("ODA").

10. Regional Land Information Database ("RLID") is the county records database that shows who owns a particular piece of land, the property size, and who pays the property taxes.  Defendant Real Property shows to be 29.86 acres and is owned by Kit Wah Chan and Karen Chan.  It appears they purchased the property in February of 2017 and immediately started getting permits from Lane County to add buildings, which appear to be designed for marijuana cultivation.

11. In the summer months of 2022, LCSO received a call reporting the burglary of a garage on the Defendant Real Property. The call indicated that a firearm was stolen.  When the LCSO Deputies responded, they were overwhelmed with the odor of growing marijuana.  As LCSO Deputies, they are familiar with the odor of growing marijuana from previous cases and have experience seizing growing marijuana at cultivation operations.

12. At the Defendant Real Property, the male on the site allowed the Deputies access into a garage-style building where the burglary occurred, but not into the two 60' by 300' buildings, which the Deputies suspected was where the marijuana was being cultivated.  The male told Deputies that he occasionally patrols the Defendant Real Property for Kit Chan as a form of caretaking.

**Declaration of Sean Cummings**                                         EXHIBIT A   PAGE 5
                                                                          Complaint *In Rem*
                                                                          FOR FORFEITURE

13. In September of 2022, LCSO partnered with Eugene Police to place an unmanned surveillance platform in the area to observe traffic coming in and out of the driveway. The camera captured several vehicles in and out of the property every day. The camera captured the property owner, Kit Wah Chan, entering and exiting the driveway several times throughout the two-week period while LCSO had the surveillance platform in place.

14. Based on DMV records and surveillance, investigators know that Kit Wah Chan operates a white 2019 Nissan Titan Pickup bearing Oregon Plate ending in 87. During surveillance, LCSO Sgt. Ryan Lane and Sgt. Combs were driving past the Defendant Real Property and based on Sgt. Combs's familiarity with Kit Chan's DMV photo, Sgt. Combs recognized Kit Chan as the male operating the white Nissan Titan.

15. During ongoing surveillance, LCSO Detective Arik Schenfeld observed Kit Wah Chan at the property working on buildings using his Nissan Titan and a large dual-axle trailer. Sgt. Combs has seen Kit Wah Chan operating a tractor on the property, including a time when a significant amount of potting soil had been removed from one of the buildings and put on the north end of the grow buildings. There were tracks from the tractor and the excavator in the potting soil as the tractor and excavator were used to spread out the soil and possibly conceal it from being visible from the roadway, which indicates to me that Chan knew about and was involved in the marijuana cultivation inside the structures.

16. Detective Schenfeld has driven by the location over a hundred times between October 2022 and March 2023 and frequently saw vehicles parked at the buildings in plain view of Dillard Road. During those drives, Detective Schenfeld has often smelled the odor of growing marijuana. It appears from his observations that numerous people work at the locations as their

**Declaration of Sean Cummings**  EXHIBIT A   PAGE 6
                                    Complaint *In Rem*
                                    FOR FORFEITURE

main source of employment.  Detective Schenfeld believes this because he has seen the same vehicles parked at the same building on a regular basis.

## POWER USAGE AT DEFENDANT REAL PROPERTY

17.   Sgt. Combs obtained the power records for the buildings at the Defendant Real Property from Lane Electric.  The power records indicate each of the buildings consumed between approximately $9,000 and $17,000 dollars-worth of electricity per month.

18.   The power records revealed the following kilowatt hour usage for Building #1 for March 2022 to January 2023:

| | |
|---|---|
| Mar. 2022 | 148,560 kilowatts at a cost of $9,711.65 |
| Apr. 2022 | 169,520 kilowatts at a cost of $10,881.22 |
| May 2022 | 187,440 kilowatts at a cost of $11,882.65 |
| June 2022 | 186,960 kilowatts at a cost of $11,855.87 |
| July 2022 | 162,040 kilowatts at a cost of $10,465.33 |
| Aug. 2022 | 153,520 kilowatts at a cost of $9,989.92 |
| Sept. 2022 | 112,920 kilowatts at a cost of $9,050.44 |
| Oct. 2022 | 103,400 kilowatts at a cost of $8,285.22 |
| Nov. 2022 | 144,120 kilowatts at a cost of $10,567.80 |
| Dec. 2022 | 145,080 kilowatts at a cost of $10,870.96 |
| Jan. 2023 | 177,040 kilowatts at a cost of $13,197.73 |

19.   The power records revealed the following kilowatt hour usage for Building #2 for February 2022 to January 2023:

| | |
|---|---|
| Feb. 2022 | 258,400 kilowatts at a cost of $15,840.72 |

| | |
|---|---|
| Mar. 2022 | 224,440 kilowatts at a cost of $13,945.75 |
| Apr. 2022 | 203,360 kilowatts at a cost of $12,769.46 |
| May 2022 | 201,080 kilowatts at a cost of $12,643.76 |
| June 2022 | 256,920 kilowatts at a cost of $15,759.64 |
| July 2022 | 208,240 kilowatts at a cost of $13,043.29 |
| Aug. 2022 | 248,640 kilowatts at a cost of $17,632.41 |
| Sept. 2022 | 221,520 kilowatts at a cost of $16,129.52 |
| Oct. 2022 | 198,920 kilowatts at a cost of $14,738.44 |
| Nov. 2022 | 234,080 kilowatts at a cost of $16,663.96 |
| Dec. 2022 | 250,000 kilowatts at a cost of $17,518.50 |
| Jan. 2023 | 145,480 kilowatts at a cost of $11,634.28 |

20.     Based on my training and experience, I know that power usage totals of $25,000 per month for both structures at the Defendant Real Property are extraordinary. The power usage listed above are extraordinarily high for the size of the buildings and the usage is well outside of normal farm electrical usage. I have been told by LSCO Deputies that this is the highest power usage ever observed for a marijuana cultivation operation by LCSO in the last 20 years. For comparison, at another recent marijuana grow, LCSO observed power usage costs of $2,000 to $4,000 per month. The extraordinary power usage and overwhelming odor of marijuana smelled by LCSO Deputies next to the buildings led law enforcement to conclude there was likely a large-scale marijuana grow at the Defendant Real Property.

21.     The power service for Building #1 is registered to an individual with the last name of Wang, born in 1967. This account has been paid in numerous different ways including cash,

**Declaration of Sean Cummings**                            EXHIBIT A   PAGE 8
                                                           Complaint *In Rem*
                                                           FOR FORFEITURE

credit cards, and money orders by twelve different people, including individuals identified herein as Supervisor #1 and Worker #2[1], but no payments were made by the property owner, Kit Wah Chan or by the person named on the power account.  Some months included a combination of credit card and cash adding up to the total, several smaller payments in cash adding up to the total, or multiple smaller money orders adding up to the total. For example, in October 2022, the bill was paid with eleven different money orders ranging from $500 to $6,500 and in January 2023, the bill was paid with eleven money orders of $1,000 each[2].

22.     The power service for Building #2 is registered to an individual with the last name of Wu, born in 1937.  This account has been paid by cash and money orders by four different people, including Supervisor #1 and Worker #2, but no payments were made either by the person listed on the account or the property owner, Kit Wah Chan.

### AERIAL SURVEILLANCE AT THE DEFENDANT REAL PROPERTY

23.     On November 30, 2022, Detective Schenfeld obtained an Unmanned Aerial System surveillance search warrant for the Defendant Real Property. Law enforcement flew the property several times during the 30-day period of the warrant.  During the flights, law enforcement observed the same vehicles parked in between Building #1 and Building #2 day after day.  Law enforcement was able to obtain license plates for the vehicles that were on the property.  Several of those license plates are registered to persons who have paid power bills for

---

[1] The names of the workers have been anonymized for the purposes of this declaration, but law enforcement knows the identities of these individuals.
[2] Although the bill for January 2023 was $13,197.73, only $11,000 in payments were made that month.

**Declaration of Sean Cummings**                                       EXHIBIT A   PAGE 9
                                                                        Complaint *In Rem*
                                                                        FOR FORFEITURE

buildings on the Defendant Real Property. The vehicles do not, however, stay the night. I therefore believe the operators of the vehicles are working at the Defendant Real Property.

24.  Law enforcement has conducted surveillance on the operators of the vehicles and observed their pattern of life. Based on this surveillance, it does not appear these individuals have any other jobs or sources of income other than the work at the Defendant Real Property. According to Detective Schenfeld, these individuals leave their homes around the same time each morning, drive the same path to the Defendant Real Property and return home in the late afternoon or early evening. When they arrive at the Defendant Real Property, they park their vehicles in nearly the same spot every day. Based on my training and experience, these patterns and behaviors lead me to believe that these workers were used to assist in the cultivation of marijuana.

## EXECUTION OF SEARCH WARRANTS

25.  On March 15, 2023, law enforcement served Lane County State of Oregon search warrants issued by the Honorable Judge Jay McAlpin at the Defendant Real Property and at other locations in the region. Upon executing the warrant at the Defendant Real Property, law enforcement seized 12,608 growing marijuana plants in the two 60' by 300' metal shops. Law enforcement observed that the majority of the property was being used to grow marijuana and store processed and dried marijuana for sale. There was also a 60' by 60' metal shop that contained a motorhome and a tool shop. The only two bathrooms on the property were in the two 60' by 300' metal shops used to grow marijuana. There were several head of cattle, goats, and chickens, but the property was not being used to raise these animals on a commercial scale.

**Declaration of Sean Cummings**                                    EXHIBIT A   PAGE 10
                                                                    Complaint *In Rem*
                                                                    FOR FORFEITURE

26.     Law enforcement interviewed several individuals that day, including Kit Chan, the owner of the Defendant Real Property.  Law enforcement attempted to interview Chan at his residence during the execution of a search warrant at his residence.  Chan indicated that he was just a landlord.  When confronted about the buildings being used to grow marijuana in this and a follow up interview, Chan said that as a landlord, dealing with the marijuana, licensing, and insurance was very difficult. He later added that it is very hard dealing with cash because the banks do not want to help you. He admitted that he attempted to get the properties licensed to grow marijuana, but it was very difficult. Kit Chan was cited for unlawful manufacture of marijuana by the Lane County Sheriff's Office.

27.     A later interview of Karen Chan indicated that she had no interest or part in the Defendant Real Property and only gets rent money sometimes from Kit Chan to take to the bank.

28.     Law enforcement conducted several interviews at the scene. None of these individuals have criminal history under the names they provided.  Law enforcement interviewed an individual identified here as Worker #1.  He spoke some English, he appeared to understand the questions, and he answered the questions intelligibly. Worker #1 said he was working at the grow site for about two months. He said that he was only allowed to enter the 60' by 300' metal shop on the west side of the property. Worker #1 said he was hired by Supervisor #1 to trim marijuana and care for the plants. Worker #1 said he has not been paid for the last two months of work but has no bills and lives with friends and other workers from the marijuana grow site. Worker #1 said that he could leave if he wanted to but has been waiting to get paid the money that Supervisor #1 owes him then he was going to leave. Worker #1 said Supervisor #1's boss owns the property. Worker #1 said he saw the owner of the property at the grow site on several

**Declaration of Sean Cummings**                                       EXHIBIT A   PAGE 11
                                                                      Complaint *In Rem*
                                                                      FOR FORFEITURE

occasions working with his tractor mixing dirt. Worker #1 said that he has trouble communicating with Supervisor #1 as Supervisor #1 speaks Chinese and Worker #1 speaks Thai. Worker #1 did not know what Supervisor #1 did with the marijuana once it was prepared for sale but saw him leave with boxes of processed marijuana in a van. Worker #1 said he often showers and prepares food at the marijuana grow location the Defendant Real Property.

29.     While at the Defendant Real Property, law enforcement also spoke with Worker #2. Worker #2 said that he has been working at the Defendant Real Property cultivating marijuana for the past two to three years. Worker #2 said he was hired by Supervisor #1 and worked for Supervisor #1 in the west metal shop on the Defendant Real Property. Worker #2 was not allowed to go into the east metal shop, but he saw marijuana growing in that shop as well. Worker #2 said Supervisor #1 only paid him every few months, but most of the time it was not very much money. Worker #2 said Supervisor #1 always said that more money would be paid once the marijuana is sold. Worker #2 said that Supervisor #1 speaks Chinese and Worker #2 speaks Thai, but they often would communicate in English. Worker #2 said he was free to leave anytime he wanted to but stayed because he was counting on getting paid the money that Supervisor #1 owned him. Worker #2 then pointed to Supervisor #1 who was sitting in a police vehicle and identified him as the supervisor of the west metal shop marijuana cultivation operation.

30.     Worker #2 said Supervisor #1 would take the marijuana from the Defendant Real Property and sell it. Worker #2 said he knew that the location was not licensed and had no postings of any licenses at any of the grow locations. Worker #2 said that Supervisor #1 told him that all the marijuana was actually hemp and hemp was legal. Worker #2 said he knew the owner

**Declaration of Sean Cummings**                                    EXHIBIT A    PAGE 12
                                                                    Complaint *In Rem*
                                                                    FOR FORFEITURE

of the Defendant Real Property because the owner would talk with Supervisor #1. He said that the owner knew that marijuana was being grown in both 60' by 300' metal shops because the owner was on site when the doors to the buildings were open and the grow rooms are visible from the outside, particularly the marijuana grow rooms in the east metal shop.

31. Worker #2 said that on several occasions people came to the Defendant Real Property and robbed them at gunpoint. Worker #2 said that on at least one occasion several white males broke into the shops and took marijuana plants and processed marijuana. The robbers also made Worker #2 and others cut down the plants and package them up so they could steal them. After that, Supervisor #1 got a gun for the Defendant Real Property. Then a group of Asian males came and broke into the property and stole the gun, processed marijuana, and marijuana plants. Worker #2 was afraid for his life as they kept getting robbed at gunpoint, so they reinforced the doors to the metal shops.

32. Law enforcement then conducted an interview of Supervisor #1 who said he has been involved in the growing of marijuana at the Defendant Real Property for the last several years. His English was good, but he had difficulty understanding some of the questions. FBI provided a Chinese interpreter to assist with much of the interview. Supervisor #1 said that he would get workers to cultivate marijuana at the Defendant Real Property and sell the marijuana to other people in the Portland, Oregon area. Supervisor #1 did not want to provide the names of the people he sold the marijuana to in Portland. Supervisor #1 said he paid the workers at the Defendant Real Property. He said he paid Chan, the owner of the Defendant Real Property, $20,000 a month in cash for the 60' by 300' foot metal shop on the west side of the Defendant Real Property. He oversaw the marijuana grown in the west metal shop only and did not know

who was in charge of the east metal shop. Supervisor #1 said he paid the workers monthly. Supervisor #1 said that Chan was aware that marijuana was being cultivated there, but generally did not go in the buildings unless there was an electrical issue or other problem. When Supervisor #1 arrived several years ago, Chan had already prepared the structures, grow rooms, lights, fans, $CO_2$ generators, and filters. Supervisor #1 said Chan had all the electrical boxes ready and water lines prepared for the cultivation of marijuana and that all Supervisor #1 had to do was start growing marijuana. Supervisor #1 said he keeps the profits he gets from selling the marijuana.

## DEFENDANT PERSONAL PROPERTY

33.     **2007 Dodge Ram 3500 Truck** - The 2007 Dodge Ram 3500 Truck, Oregon Plate ending in AQ is registered to the "Kit & Karen Chan Family LLC." The truck was first seen parked at Kit and Karen Chan's residence shortly after it was purchased and before it was even registered with new dealer placards but no plates. It was later seen at the Defendant Real Property being used to haul the trailer described below around the Defendant Real Property. In an interview with law enforcement, Kit Chan admitted that it was bought to be used at the Defendant Real Property. After its initial purchase, law enforcement saw the Dodge Ram only at the Defendant Real Property. Law enforcement seized this vehicle during the execution of the warrant.

34.     **2022 Great Northern Trailer Works, Inc. 14K Custom Gooseneck Dump Trailer** - Law enforcement observed the Dodge Ram Truck being used to haul the 2022 Great Northern Trailer Works, Inc. 14K Custom Gooseneck Dump Trailer, to move materials and items, including the Kubota Tractor and the Takeuchi Excavator around the Defendant Real

**Declaration of Sean Cummings**                                     EXHIBIT A   PAGE 14
                                                                           Complaint *In Rem*
                                                                           FOR FORFEITURE

Property for the marijuana growing operations. Kit Wah Chan purchased the trailer on December 22, 2022, from Great Northern Trailer Works, Inc., Sutherlin, Oregon. Law enforcement seized this trailer during the execution of the warrant.

35. **Kubota M7060HDC12 Tractor with Bucket Loader** – Law enforcement watched Kit Chan performing work with the Kubota Tractor at the Defendant Real Property. In one instance Kit Chan was using the tractor on the north end of the buildings. There was a significant amount of potting soil that had been removed from the buildings, likely after it was used to grow marijuana. Kit Chan used the Kubota tractor to spread out the potting soil and disperse it over a wider area, potentially to avoid attention to a large pile of potting soil and suspicions about the grow. Law enforcement also saw workers at Defendant Real Property use the bucket on the tractor to move pallets. Law enforcement seized this tractor and bucket during the execution of the warrant.

36. **Takeuchi TB235-2 Excavator** – After law enforcement saw Kit Chan operating the Kubota tractor to move soil and root wads, law enforcement also saw tracks from the excavator in the same potting soil piles during subsequent drone flights. This leads me to believe that this excavator was also used to further the marijuana operation by concealing the grows' presence and hiding the amount of soil and root wads on the property. Law enforcement seized this excavator during the execution of the warrant.

37. **$129,822 U.S. currency** - On the same date as the search warrant on Defendant Real Property, law enforcement also executed a search warrant at the primary residence of Kit and Karen Chan on Meadow View Drive, Eugene, Oregon. During the execution of the warrant

**Declaration of Sean Cummings**　　　　　　　　　　　　EXHIBIT A   PAGE 15
　　　　　　　　　　　　　　　　　　　　　　　　　　　　Complaint *In Rem*
　　　　　　　　　　　　　　　　　　　　　　　　　　　　FOR FORFEITURE

at Meadow View Drive, law enforcement located $129,822 U.S. currency in the large safe in the garage. Kit Chan opened the safe for investigators using the combination.

38. Because banks report deposits of over $10,000 cash, based on my training and experience, I know that individuals with criminal proceeds often try to avoid these reporting thresholds. They can often do this by not depositing large amounts of money and/or making more frequent smaller deposits to the bank. Both lead to individuals with criminal proceeds having more cash on hand than most people without criminal proceeds.

39. I believe that Kit Chan was not able to deposit all the cash he would receive from the marijuana properties, only parts of it. This led him to have to store it in a large safe in his garage. Based on the large amount of rent each month ($20,000 for just one building), Kit Chan's statements about having difficulty with banks taking cash, and his wife's statements about taking cash from rental property to the bank for deposit, I believe these funds Kit and Karen Chan obtained as rent from the illegal marijuana grow at the Defendant Real Property.

40. **$1,182 U.S. currency** - Law enforcement also located $1,182 in U.S. currency in a desk in the front office at the Meadow View Drive residence. The currency was discovered in the desk along with money orders in $1,000 and $500 increments that Karen Chan stated were for rental properties and real estate paperwork. The money orders appeared to be rent paid for a Eugene marijuana grow that is licensed. It was not apparent with which rental property the cash was associated.

41. **$4,000 U.S. currency** – Law enforcement also located $4,000 in a Nissan pickup truck in the front driveway of the Meadow View residence and searched it pursuant to a search warrant. This vehicle is Kit Chan's primary vehicle. I have seen him operate this vehicle on

**Declaration of Sean Cummings**  EXHIBIT A   PAGE 16
                                    Complaint *In Rem*
                                    FOR FORFEITURE

numerous occasions. In addition, I have seen it used at the Defendant Real Property to tow the dual-axle trailer on the property. Locating currency in Kit's vehicle is consistent with Kit Chan picking up rental payment from the illegal marijuana grow. Kit and Karen Chan both admitted to getting cash payments from the marijuana grow that they could not deposit into a bank without raising concern and getting reported for those cash deposits. Kit Chan did not have another reason why the cash would have been in the truck.

## CONCLUSION

42.     The evidence in this declaration provides probable cause to believe, and I do believe that the Defendant Real Property was used or intended to be used to facilitate the illegal production, conversion, and distribution of marijuana, in violation of Title 21, United States Code, Section 841, 846, and 856, and is therefore subject to forfeiture pursuant to Title 21, United States Code, Section 881(a)(7); and Defendant Personal Property represents proceeds traceable to an exchange for controlled substances or were used or intended to be used to facilitate such a transaction in violation of Title 21, United States Code, Section 841, 846, and 856, and is therefore subject to forfeiture pursuant to Title 21, United States Code, Sections 881(a)(4) and (a)(6).

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

Executed this 23rd day of August 2023.

> /s/ Sean Cummings
> SEAN CUMMINGS
> Special Agent
> Drug Enforcement Administration